**FIRST DIVISION**
**BARNES, P. J.,**
**MILLER, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 20, 2023**

# In the Court of Appeals of Georgia

A23A0111. IN THE INTEREST OF H. P., A CHILD.

BARNES, Presiding Judge.

H. P. was adjudicated delinquent based on her admission of an act which, if committed by an adult, would have constituted family violence battery. She appeals from that judgment and contends that the juvenile court's disposition was "illegal" in that, in addition to the Probation Management Program ("PMP"), the disposition also included secure probation sanctions. She maintains that the sentence thus subjected her to the risk of custodial time for a single misdemeanor adjudication in violation of Georgia law and the Juvenile Code, which require a felony offense prior to incarceration. H. P. also contends that, even if the disposition is lawful, a juvenile probation officer is not authorized to incarcerate her in a Regional Youth Detention Center ("YDC"). Following our review, we affirm.

"[C]onstrued in favor of the juvenile court's findings," *In the Interest of J. W.*, 309 Ga. App. 470, 470-471 (711 SE2d 48) (2011)[1], the record demonstrates that the State filed a delinquency petition against then 16-year-old H. P. alleging that she had committed a battery pursuant to the Family Violence Act. H. P. was alleged to have caused "visible injury" to her father by punching, kicking, and scratching him. H. P. denied the allegation, and subsequently an adjudication hearing was scheduled. At the hearing, H. P. admitted to the battery, and the juvenile court delayed adjudication and disposition of the case to obtain a social history. H. P.'s social history report noted no prior law enforcement or court history, but that she currently received treatment for a mood disorder, used marijuana, acid, and "other drugs," and had issues in her family life, including little contact with her mother and a strained relationship with her father.

Thereafter, the rescheduled adjudicatory hearing was held, and at the request of H. P.'s counsel, the juvenile court agreed to hold the case in abeyance for H. P. to complete certain conditions, including participate in wrap-around services and counseling, avoid violent contact with anyone, attend school, and complete girls

_____

[1] We note that no transcripts from any related hearings were included with the appellate record.

2

group/life skill classes. However, before the hearing date, the court held a review hearing at which H. P. admitted to violating the conditions of her abeyance by having another violent contact with her father, and refusing to go to school or take her medications. The juvenile court also noted that H. P. may have committed a battery against the mother in another county. Following the hearing, the trial court placed H. P. on PMP probation with secure probation sanctions.[2] In the disposition order, the juvenile court acknowledged H. P.'s objection to secure probation sanctions for a misdemeanor offense, and that the parties had briefed the court on the issue before entry of the final judgment.

1. The appellant first contends that the juvenile court erred by imposing a secure sanctions program for a misdemeanor adjudication. According to H. P., by subjecting her to the risk of incarceration, the juvenile court imposed an illegal sentence that is not supported by a proper construction of Georgia law. H. P. asserts that PMP without the secure probation sanctions was the appropriate disposition.

---

[2] On the pre-printed "Adjudication and Disposition" form, the juvenile court placed H. P. on probation with the "following programs and conditions": health relations classes, individual counseling, take medication as prescribed, attend girls group, avoid violent contact with anyone, and "Probation Management Program/Secure Probation Sanctions." There is no separate condition on the disposition form for the court to only select PMP.

Statutory interpretation is a question of law, which we review de novo, giving no deference to the trial court's ruling. *State v. Hammonds*, 325 Ga. App. 815, 815 (755 SE2d 214) (2014). In interpreting the statutes at issue,

> we look to the literal language of the statutes, the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute[ ] so as to give effect to the legislature's intent. But as our Supreme Court has instructed, the search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous, the search also must end there. Put another way, when we consider the meaning of a statute, we must presume that the legislature meant what it said and said what it meant. We cannot substitute judicial interpretation language of our own for the clear, unambiguous language of the statute, so as to change the meaning.

(Punctuation and footnotes omitted.) *Collins v. Davis*, 318 Ga. App. 265, 268 (1) (733 SE2d 798) (2012), overruled in part on other grounds, *Voyles v. Voyles*, 301 Ga. 44, 47 n. 5 (799 SE2d 160) (2017).

Turning to the statutes in question, OCGA § 15-11-601 (a) (3) provides, in relevant part, that

> [a]t the conclusion of the disposition hearing, if a child who committed a delinquent act is determined to be in need of treatment or rehabilitation, then after considering the results of such child's risk assessment if the court is contemplating placing such child in restrictive

4

custody, the court shall enter the least restrictive disposition order appropriate in view of the seriousness of the delinquent act, such child's culpability as indicated by the circumstances of the particular case, the age of such child, such child's prior record, and such child's strengths and needs. The court may make any of the following orders of disposition, or combination of them, best suited to such child's treatment, rehabilitation, and welfare[,including an] order placing such child on probation under conditions and limitations the court prescribes and which may include the *probation management program*.[3]

(Emphasis Supplied.)

The statute also provides that the juvenile may be placed in the Georgia Department of Juvenile Justice's ("DJJ") custody pursuant to OCGA § 15-11-601 (a) (11) "only if such child was adjudicated for a delinquent act involving" either

> (A) [a]n offense that would be a felony if committed by an adult; or

> (B) [a]n offense that would be a misdemeanor if committed by an adult and such child has had at least one prior adjudication for an offense that would be a felony if committed by an adult and at least three

---

[3] "'Probation management program' means a special condition of probation that includes graduated sanctions." OCGA § 15-11-471 (11).

5

other prior adjudications for a delinquent act as defined in subparagraph
(A) of paragraph (19) of Code Section 15-11-2.

OCGA § 15-11-601 (a) (10).

In conjunction with the juvenile court's authority under OCGA § 15-11-601 to place the child on probation, the juvenile court can order that the child be placed on probation under PMP with graduated sanctions, including secure probation sanctions at the request of the probation officer supervising the child.[4] See OCGA § 15-11-605 (a) (1) and (2) (providing that "[i]n addition to any other terms or conditions of probation provided for under this article, the court may require that children who receive a disposition of probation: (1) Be ordered to a probation management program; or (2) Be ordered to a secure probation sanctions program by a probation officer or hearing officer."). OCGA § 15-11-605 (f) (1) explains that a probation officer supervising a child under PMP can request secure probation sanctions only upon "provid[ing] an affidavit to the court specifying: (A) The elements of such child's probation program;(B) Such child's failures to respond to graduated sanctions in the community; and (C) Such child's number of violations and

---

[4] "'Secure probation sanctions program' means confinement in a secure residential facility or nonsecure residential facility for seven, 14, or 30 days." OCGA § 15-11-471 (12).

6

the nature of each violation." The statute further specifies that if the probation officer "fails to document the violations and specify how a child has failed to complete a probation management program, such child shall be ineligible to enter the secure probation sanctions program." OCGA § 15-11-605 (f) (2).

Contrary to H. P.'s contention, the aforementioned statutes do not require that the offense be a felony before the child, who is on probation under PMP, enters the secure probation sanctions program. Instead, read in conjunction, the statutes contemplate that a child has been placed on probation under PMP– a special condition of probation– and has failed to complete PMP before being eligible for secure probation sanctions.

Although asserted by H. P. that the disposition was illegal in that "Probation Management Program/Secure Probation Sanctions " was checked on the pre-printed disposition sheet, "it is the substance and not mere nomenclature which determines the nature and finality of the order." *In re Estate of Simes*, 246 Ga. App. 451, 452 (540 SE2d 650) (2000). See *Mughni v. Beyond Mgmt. Group*, 349 Ga. App. 398, 399 (1) (825 SE2d 829) (2019) (noting that the denomination of order as "Final Order and Judgment," does not control whether order is final for purposes of direct appeal).

The record clearly demonstrates that H. P. was not placed on secure probation sanctions, and the juvenile court did not, as H. P. contends, "order incarceration." Rather, as reflected on the document outlining the conditions of H. P.'s probation, she was under the supervision of her parents, and not in DJJ custody. See OCGA § 15-11-471 (12) ("'Secure probation sanctions program' means confinement in a secure residential facility or nonsecure residential facility" for specified time periods). The document further outlined all of the special conditions of her probation, and included only "PMP", and not secure probation sanctions. Thus, for purposes of discerning the legality of H. P.'s disposition, there is no conflict with any other statutory provisions providing that a child must be adjudicated for a crime that would be a felony if committed before a disposition of incarceration is authorized. See OCGA § 15-11-601 (a) (10), (11); *In the Interest of J. W.*, 363 Ga. App. 616, 621-625 (2) (871 SE2d 886) (2022) (reversing juvenile court after concluding that court was not authorized to commit child to DJJ custody when child was not charged with designated felony act). While H. P.'s PMP disposition includes the risk of the trial court later ordering secure probation sanctions if H. P. fails to complete her PMP and if such sanction is requested by her probation officer, such an adjudication is not an order of

incarceration pursuant to OCGA § 15-11-601 (10), and thus not an illegal disposition as maintained by H. P.[5]

Moreover, although H. P. contends that a juvenile court is not authorized to issue a disposition which includes PMP *and* secured probation sanctions, "[u]nder these circumstances, issuing an opinion on this issue would be, in essence, rendering an advisory opinion," because H. P. was not placed on secure probation sanctions. *WellStar Health System v. Sutton*, 318 Ga. App. 802, 805 (3) (734 SE2d 764) (2012).

2. Regarding the H. P.'s contention that a probation officer does not have the authority to sanction the incarceration of a juvenile with a single misdemeanor in the YDC pursuant to OCGA § 15-11-605 (a) (2), the record does not demonstrate that she was, in fact, ever incarcerated at a YDC, nor that her probation officer ever exercised such authority to request such a detention. H. P. only alleges such a risk.[6] Again, "[w]e are a court for the correction of errors and are not authorized to issue an advisory opinion about a potential error . . . ." (Citation and punctuation omitted.)

---

[5] See *Jones v. State*, 278 Ga. 669, 670 (604 SE2d 483) (2004) (Under Georgia law, "[a] sentence is void if the court imposes punishment that the law does not allow.") (citations and punctuation omitted).

[6] N. P. acknowledges that she has not yet "suffered an immediate harm of being incarcerated" and faces only a "potential threat of incarceration."

*Tiffany and Tomato, Inc. v. Wells and McElwee, P. C.*, 358 Ga. App. 311, 316 (1), n. 6 (855 SE2d 55) (2021).

Moreover, the statute clearly states that a probation officer may only request secure probation sanctions, such that the authority to order those sanctions ultimately rests with the juvenile court. See OCGA § 15-11-605 (f) (1). The statute is clear that "[a] child may enter the secure probation sanctions program *if ordered* by the court." (Emphasis supplied.) OCGA § 15-11-605 (f) (3). Likewise, if the probation officer "fails to document the violations and specify how a child has failed to complete a probation management program, such child shall be ineligible to enter the secure probation sanctions program." OCGA § 15-11-605 (f) (2). Accordingly, this enumeration fails.

*Judgment affirmed. Miller, P. J., and Land, J., concur.*